SCHOTT, Judge.
These cases arose out of an automobile accident which occurred at about 4:00 PM on December 15, 1969, on Highway 90 at its intersection with Jamie Boulevard near Avondale Subdivision in Jefferson Parish.
Highway 90 in this vicinity consisted of four lanes of traffic divided by a neutral ground with two lanes each for traffic traveling east and west on the highway. At Jamie Boulevard, which intersected the highway at a right angle, there was a third “stacking” lane cut into the neutral ground on each side to accommodate traffic turning left from Highway 90 into Jamie Boulevard. The intersection was controlled by five sets of electric semaphore signals hanging from a wire suspended across the intersection from poles located on the northwest and southeast corners of the intersection.
Prior to the accident, William H. New-lon had been proceeding west on Highway 90 and Mrs. Gloria Dunn, accompanied by her one-year old son, had been traveling east on the highway.. Mrs. Dunn entered the stacking or turning lane, made a left turn, whereupon the collision occurred between her vehicle and Newlon’s on the westbound side of the highway. Following this initial collision, Newlon’s automobile also collided with an automobile operated by Mrs. Gaynelle C. Marchand which had *737 been stopped on the east side of Jamie Boulevard at its intersection with Highway 90.
The electric semaphore signal system designed for the intersection consisted of a number of phases under which the movement of traffic through the intersection was governed by green lights or green arrows at appropriate times when other traffic was required to stop in obedience to red lights. The two sets of lights on each side of the neutral ground of Highway 90 afforded traffic control to traffic proceeding straight along the highway and traffic entering or crossing the highway from Jamie Boulevard. The function of the lights in the middle of the intersection was to govern traffic turning left onto Jamie Boulevard from the stacking lanes of Highway 90. These middle lights consisted of signals facing only to the east and west along the highway with no signals facing Jamie Boulevard. Traffic along Highway 90 was favored with a green light until a vehicle entered the stacking lane and made contact with a pressurized bar on the road’s surface causing the green light on the opposite side of the highway to change to red and the red light facing the stacking lane to change to a green arrow, authorizing the left turn. When a red light was displayed for the left turning traffic from the stacking lane the lights would be green for traffic approaching on Highway 90 from the opposite direction. In addition, the two sets of lights facing traffic on Jamie Boulevard on the north side of the Highway 90 neutral ground were constructed in such a way that westbound traffic on Highway 90 had a green light signal until traffic traveling south on Jamie Boulevard would make contact with a pressurized bar causing the lights facing westbound traffic on Highway 90 to change to red and those facing Jamie Boulevard to display á green arrow and for a green light permitting Jamie Boulevard traffic to make a right turn into the highway and/or to proceed across Highway 90. When the lights facing Jamie Boulevard were red the lights for westbound traffic along Highway 90 were green.
At about 2:30 on the afternoon of the accident a large truck trailer combination owned by Winn-Dixie proceeded south from Jamie Boulevard and made a left turn onto the eastbound roadway of Highway 90. According to two witnesses, who were inside of a bank building near the northeast corner of the intersection at the time, this Winn-Dixie trailer then struck the lights in the middle of the intersection, causing them to be twisted and damaged. No report of this incident with the lights was made by Winn-Dixie’s driver who denied that his vehicle struck the lights. Nevertheless, the light was damaged to some extent and the part this played in the causation of the accident between Mrs. Dunn and Newlon is the principal issue in this case.
Suit was filed by Zurich Insurance Company, the subrogated collision insurance carrier of William H. Newlon, and by Newlon himself, against Mr. and Mrs. Dunn, Winn-Dixie and the Department of Highways. Newlon also joined Zurich as a defendant in his suit based upon the uninsured motorist provisions of the policy of insurance written by Zurich. Mr. and Mrs. Dunn filed claims for their own damage, as well as for damage in behalf of their minor son, against Winn-Dixie, the Department of Highways and Zurich Insurance Company, as the insurer of New-lon. The claims by the Dunns and Newlon against each other are based upon allegations of negligence by the other in the operation of his or her automobile. The claims against Winn-Dixie are predicated on the negligence of Winn-Dixie driver in striking the signal light, in failing to report that the signal light had been damaged, and in failing to protect traffic from a hazardous situation created by the damage to traffic signal. The claims against the Highway Department are predicated on their failure adequately and promptly to repair the traffic signals and maintain them properly.
*738 The trial judge found that the middle signal lights were suspended below the height of the Winn-Dixie trailer and that this trailer had struck the signal light shortly after 2:30 PM; that the signal light was not rendered inoperable nor was there a malfunction in the electric circuit controlling the lights but that lower door of the light facing Mrs. Dunn on Highway 90 was knocked open, so that the left turning signal which normally was a green arrow was a white light, but that all other traffic control signals and phases continued to operate in the proper sequence; that Mrs. Dunn made her left turn in the face of a red light and that this was the sole proximate cause of the accident with Newlon, who had been proceeding with the green light. He found no negligence on the part of the Winn-Dixie truck driver because his trailer was below the statutory maximum height for a truck, and that the driver’s failure to report striking the light was not a proximate or contributing cause of the collision. Finally, he found that the Department of Highways knew or should have known that the light was suspended too low, but that its failure to raise the light was not a proximate or contributing cause of the collision. Thus, he awarded a judgment in favor of Zurich against the Dunns for $1,000, and in favor of Newlon against the Dunns for $85,000. Provisions were made for recognition of Mrs. Dunn as an uninsured motorist with a corresponding obligation by Zurich to pay $5,000 to Newlon under the uninsured motorist coverage and for Zurich to have the right of indemnity for this amount against the Dunns. All parties have appealed, with the principal issues being the negligence of Winn-Dixie and the Department of Highways.
The pivotal question of this appeal is whether the damage done to the middle signal light facing Mrs. Dunn was such as to cause the accident to occur. If so, consideration must be given to the Highway Department’s conduct with respect to that light and to the Winn-Dixie driver’s conduct after his trailer struck the light. On the other hand, these questions need not be explored if the trial judge was correct in his findings that the damage to the light did not cause the accident in the first instance.
Newlon was unable to contribute any testimony concerning the accident since he suffered a concussion and was unable to recall even the occurrence of the accident much less the condition of the signal lights at the intersection. However, it was established that Newlon had a green light from the testimony of three witnesses, who had been in different vehicles on Jamie Boulevard facing Highway 90 from the north, to the effect that they had a red light and were waiting for a green light or green arrow when the accident occurred. But these witnesses did not see the middle lights and contributed nothing on their condition at the time of the accident. On this issue Newlon, Zurich and the Dunns rely primarily on the testimony of two ladies, employees of the bank near the northeast corner who testified that from inside of the bank they saw the Winn-Dixie truck strike the middle light with the result that the light was twisted to such a degree that instead of facing Mrs. Dunn it was also facing Jamie Boulevard. One of these witnesses stated that it was twisted to a 45-degree angle. They also said that the housing for the green arrow lens had opened and was hanging below the light itself. This testimony that the light was twisted was corroborated by that of one of those witnesses stopped on Jamie Boulevard waiting for the light to change to the effect that on the day after the accident he saw that this light was “offset a little bit.” The police officer who investigated the accident verified that the lens covering was hanging from the light so that what would ordinarily have been a green arrow was a white light, but this officer made no mention in his report of the light being twisted and testified that had such a condition existed it would have been noted in his report.
*739 The difficulty in these claimants’ cases is that the one who was directly affected by this light, namely, Mrs. Dunn, did not support the testimony that the light was twisted but on the contrary testified without equivocation that the light was facing her, that it was red when she arrived at the intersection requiring her to wait, and that she moved when the green arrow showed on the light. This is substantially what she told the investigating officer shortly after the accident. The claimants would have us disregard her testimony that the light was not twisted on the theory that since she could not have seen the green arrow she must have been confused and disoriented by the twisted view of the light which she must have had. They say that her confusion caused her to proceed with a left turn in the face of the oncoming Newlon automobile and that her confusion was caused by the twisted, broken condition of the signal light.
For us to accept this theory we would be required to reject Mrs. Dunn’s testimony in its entirety and accept the testimony of these two ladies in the bank over the testimony of the police officer as to the twisted condition of the light. On our own review of the testimony of these ladies, it is clear that they were confused on some points and certainly their testimony must be evaluated in the light of the fact that their vantage point was inside of the bank building at some distance from the intersection and the light itself. At no time did they go out to the intersection where they could have investigated the light’s condition at close range, and especially from the point where Mrs. Dunn had been prior to her making her left turn. It was the province of the trial judge to weigh and evaluate the testimony of these witnesses and we do not find any compelling reason from the record for us to substitute our judgment in this connection for his.
Furthermore, the degree of proof required to sustain the claimants’ position with respect to the confusion in Mrs. Dunn’s mind would have to be considerable when Mrs. Dunn herself expressed no such confusion, and on the contrary testified emphatically that the light was working, was pointing directly to her and that she moved in obedience to it. In the final analysis the case for confusion in Mrs. Dunn’s mind is based upon speculation and not upon evidence.
The trial judge could have concluded from the testimony any one of three possibilities : That Mrs. Dunn moved when the light was red; that she moved when the light ordinarily showed a green arrow but was white; or that Mrs. Dunn was confused and misled into believing that the light changed from red to a green arrow after she had stopped because of the light’s twisted condition with the green arrow lens hanging from the hinges of the housing. There is no manifest error in the trial judge’s rejection of the last two possibilities and his finding the first to be the facts, to wit, that she moved in the face of a red light.
Much of the testimony at the trial was taken up with the convincing evidence that the Highway Department had in the six months preceding the date of this accident been required repeatedly to repair the lights after knock-downs from vehicles on the highway. It was established that the Winn-Dixie truck was within the height limits so that it follows that this light was below those height limits. After the accident the Department raised the lights to a height in excess of 15 feet, and the records show no more knock-downs at the scene of the light for the following 18 months. Thus, there is ample evidence to support the proposition that the Highway Department was negligent in its failure to raise that light and that this negligence caused the light to be struck by the Winn-Dixie truck shortly before the accident. But in view of our determination that the lights were not malfunctioning and that the condition of the lights did not cause the accident, the Highway Department’s dereliction cannot be said to be a proximate or legal cause of the claimants’ damages.
*740 Likewise, whether Winn-Dixie had any responsibility in the premises or not, they have no legal liability to the claimants for their damages.
Accordingly, the judgment appealed from is affirmed with the cost of this appeal to be born by Zurich Insurance Company, William H. Newlon and Mr. and Mrs. Elbert Dunn in three equal shares.
Affirmed.